CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
APR 17 2009
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| RUSSELL MARKS, <br> Plaintiff, | Civil Action No. 7:08-cv-00452 |
| v. | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Russell Marks, a federal prisoner proceeding pro se, filed this Bivens[1] and Federal Tort Claims Act ("FTCA")[2] civil action, with jurisdiction vested in 28 U.S.C. § 1331. I previously terminated several defendants as a matter of law. The court subsequently conditionally filed the complaint and advised Marks of its defects. Marks responded with an amended complaint that the court accepted. Marks names the following Bureau of Prisons ("BOP") employees as defendants in their individual and official capacities: Tracy Johns, Warden of the United States Penitentiary at Coleman, Florida ("USP Coleman"); FNU[3] Santos and FNU Bolle, unit managers at USP Coleman; FNU Lang, a case manager at USP Coleman; FNU Pitts, a Lieutenant at the United States Penitentiary in Lee County, Virginia ("USP Lee"); and FNU Shamblee, a case manager at USP Lee. Marks alleges that the defendants deprived Marks of his Fifth and Eighth Amendment rights and negligently caused his assault. After screening the amended complaint pursuant to 28 U.S.C. § 1915A, I dismiss the Bivens claims for failing to state a claim upon which relief may be granted and dismiss the FTCA claims as time barred.

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] 28 U.S.C. §§ 2671-2680.

[3] Marks did not provide these defendants' first names but labeled them "FNU" for "first name unknown."

I.

Marks alleges the following relevant facts in his amended complaint. Several inmates at various institutions targeted Marks for attacks because he disclosed incriminating information in 1999 about an inmate who was a prison-gang member. Marks tried to persuade a federal prosecutor to file a substantial assistance motion on his behalf in exchange for this information. The prosecutor declined to file the motion, and Marks asked a federal court to compel the substantial assistance motion. The federal court declined Marks' request and entered an opinion in 2001 that detailed the facts about Marks' disclosures.[4] The opinion was subsequently published in the Federal Reporter series, which is available in prisons' law libraries. Fellow prison gang members read the opinion and discovered that Marks was the informant.

Upon his arrival at USP Coleman in March 2006, Marks told the intake staff that they needed to put him in protective custody because of the continuing threat to his safety.[5] The intake screeners agreed and placed Marks in protective custody during a protective custody investigation. Johns, Santos, Bolle, and Lang approved the investigation's conclusion that Marks should remain in protective custody and not be placed in general population housing while at USP Coleman.

In January or February 2007, Johns, Santos, Bolle, and Lang told Marks that he would be transferred to another USP. Marks told these defendants that he would be in fear of the constant threat of attack while housed at another USP and "would be particularly vulnerable to attack if

---

[4] Marks alleges that inmates at the prison where he was located at the time he disclosed the information learned in the fall of 2000 that Marks was the informant.

[5] Marks alleges that various inmates assaulted him in December 2000 at USP Leavenworth, in September 2003 at FCI Three Rivers, and in April 2004 at FCI Beaumont because of his published disclosure. Including the final assault at USP Lee, Marks alleges being attacked four times in nine years for his disclosure.

2

placed into the general population." (Am. Compl. 10) (emphasis added). Marks asked these defendants to waive his public safety factor ("PSF") so he could be transferred to a less secure facility, but they did not waive his PSF.[6]

In March or April 2007, Johns, Santos, Bolle, and Land told Marks that the BOP would transfer him to USP Lee. Marks alleges that he specifically informed these defendants that:

> due to his status as an informant, he would be attacked if placed into the general inmate population at USP Lee. Despite this knowledge, [these defendants] allowed [Marks] to be transferred to USP Lee where they knew he would be forced to live in constant fear of attack and would be particularly vulnerable to attack if placed into the general inmate population.

(Am. Compl. 10.) Marks arrived at USP Lee in May 2007 and informed defendants Pitts and Shamblee, the intake screeners, about his victim history at other institutions because of the disclosure. Pitts and Shamblee disregarded this information and assigned Marks to general population housing. Marks reported to general population, and two inmates attacked him on May 3, 2007, at USP Lee because of his prior disclosure. Marks sustained several blows to his head during the attack. (Am. Compl. 11-12, 22.)

Marks argues that Johns, Santos, Bolle, and Lang were deliberately indifferent and negligent about Marks' safety because they knew that Marks would "live in constant fear of attack and would be particularly vulnerable to attack if placed into the general inmate population at USP Lee." (Am. Compl. 12.) Marks believes that these defendants should not have allowed the BOP to transfer Marks to USP Lee. (Am. Compl. 12.) Marks argues that Pitts and Shamblee were also deliberately indifferent and negligent about his safety by assigning him to general

---

[6] Although Marks requested the PSF reduction to facilitate his transfer to an FCI because he believed that he would be safer there, two of the three previous assaults occurred at a "less secure" FCI.

3

population housing at USP Lee.

II.

I am required to dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief," and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964, 1965 (2007) (internal quotation marks omitted). Although I liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

A.

In Bivens v. Six Unknown Named Agents of of the Federal Bureau of Narcotics, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution committed when the officials were acting under color of law. 403 U.S. at 392. An action under Bivens is almost identical to an action under 42 U.S.C. § 1983, except that the former is maintained against federal officials for a violation of a constitutional right while the

4

latter is against state officials. See Carlson v. Green, 446 U.S. 14, 24-25 (1980); Butz v. Economou, 438 U.S. 478, 504 (1978). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825, 839-40 (1994); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833. To establish a claim under Bivens for failure to protect an inmate from violence, an inmate must show that the harm suffered was objectively serious and that prison officials acted with deliberate indifference. Id.; see Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) (holding that there is no constitutionally significant distinction between Eighth Amendment failure to protect and inadequate medical care claims). A prison official is deliberately indifferent "if he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

Marks fails to state an Eighth Amendment claim against Johns, Santos, Bolle, and Lang, the USP Coleman defendants, because he fails to establish that these defendants knew that Marks faced a substantial risk of serious harm at USP Lee. Marks recognizes in his amended complaint that he would be only vulnerable to attack if he was placed in general population at another prison. (Am. Compl. 10-11.) The USP Coleman defendants could not be certain that Marks would be placed in general population housing at USP Lee because the decision to place an arriving inmate in protective custody is within the discretion of the officials at the receiving facility. See 28 CFR §§ 522.21, 524.11 (stating warden and staff of receiving institution determine where to house and how to classify arriving inmates). Marks also fails to establish that he would be exposed to a substantial risk because he alleges that he would only be vulnerable to an unspecific attack.

5

Therefore, the Coleman defendants cannot be deliberately indifferent without knowledge of an existing substantial risk. Furthermore, allegations of a prison official's negligence or fear of a possibility of harm do not state any constitutional claim. See Daniels v. Williams, 474 U.S. 327, 335-36 (1986) (holding mere negligence by prison officials does not state a constitutional claim); Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (finding that fear and emotional distress suffered from contemplating the risk of contracting AIDS or any other communicable disease fails to state an Eighth Amendment claim).

Marks also fails to state a claim against the defendants because he does not establish an objectively serious injury. A serious medical need is one that poses a substantial risk of serious injury to a person's health and safety that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the need for a physician's treatment. Iko v. Shreve, 535 F.3d 225, 241 (4th. Cir. 2008); Young v. City of Mount Ranier, 238 F.3d 567, 576 (4th Cir. 2001); see Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force."); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (holding that de minimis injury does not state a viable constitutional claim for an Eighth Amendment excessive force claim); see also Boyce v. Moore, 314 F.3d 884, 890 (7th Cir. 2002) (holding that minor symptoms, like swelling, are not an obvious, excessive risk). Marks states in his complaint that he received "several blows to the head as a result" of the USP Lee assault.[7] (Compl. 12.) Marks reiterates in his amended complaint that he received only

---

[7] Marks cites to his enclosed medical report that describes several contusions and areas of redness and swelling. (Compl. 151.) The report indicates that a registered nurse, not a physician, assessed his injuries and the treatment consisted of offering Ibuprofen, advising Marks to wash with soap, and applying cool compresses to the red areas.

several blows to his head without any further explanation or details. (Am. Compl. 11-12.) Marks fails to establish how "several blows to the head" is an injury serious enough to mandate a physician's treatment or so obvious that even a lay person easily recognizes the need to seek treatment from a physician. Therefore, Marks fails to establish an Eighth Amendment violation. Accordingly, I dismiss Marks' Bivens claims for failing to state a claim upon which relief may be granted.

B.

The United States' sovereign immunity bars a tort claim under the FTCA unless the plaintiff presents a written claim to the appropriate Federal agency within two years of the claim's accrual and the plaintiff files his civil action within six months after an agency mails its notice denying the claim. 28 U.S.C. § 2401; see Carr v. Veterans Admin., 522 F.2d 1355, 1357-58 (5th Cir. 1975) (holding that adherence to the statutory language of six-month limitation period is necessary because the waiver of sovereign immunity embodied in § 2401 is to be strictly construed). Marks included in his complaint the BOP's letter and envelope informing him of its rejection of his claims. (Compl. 169-71.) The letter is dated September 20, 2007, and the envelope bearing the certified mail receipt is date-stamped September 25, 2007. The letter informed Marks that the BOP denied his claims and he had six months from the date of the letter to file an action in federal court. However, Marks did not sign and file his complaint until July 30, 2008.[8] Therefore, Marks filed his FTCA action beyond the allowed period. Accordingly, I dismiss Marks' FTCA claims as time barred by the six-month statute of limitations.

---

[8] The conditional filing order advised Marks that his FTCA action appeared untimely and granted him the opportunity to explain the deficiency. Marks failed to discuss the untimeliness of his FTCA action in his responses to the conditional filing order.
 The FTCA rejection letter has a handwritten notation across the top, stating "Received 12 Feb. 2008." Even if Marks received the letter on that date, Marks still had until late March 2008 to file an FTCA action.

7

III.

For the foregoing reasons, I dismiss Marks' complaint because his <u>Bivens</u> claims fail to state a claim upon which relief may be granted and his FTCA claims are time barred.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER**: This 17th day of April, 2009.

*Jackson L. Kiser*
Senior United States District Judge